UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | No. 23-cr-192 (1) (KMM/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Jonathan Marquist Payton, | |
| Defendant. | |

On May 16, 2023, Jonathan Marquist Payton was indicted on a single count of being a Felon in Possession of Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (Doc. 1.) This matter is before the Court on Mr. Payton's Motion to Suppress Evidence. (Doc. 27.) This motion has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

In his motion, Mr. Payton alleges that incriminating items were seized from his vehicle based on a defective search warrant. (Doc. 27 at 1-3.) In response, the government asserts that the affidavit in support of its warrant established probable cause for the search of Mr. Payton's vehicle, and the *Leon* "good faith" exception[1] would apply to cure any defect in the warrant. (Doc. 33 at 7-12.) The Court held a motions hearing on September 21, 2023. Success Carter, Esq. and James Becker, Esq. appeared on behalf of Mr. Payton, who was present at the hearing. Assistant United States Attorney T. Campbell Warner, Esq.

---

[1] *United States v. Leon*, 486 U.S. 897 (1984).

appeared on behalf of the government. Given Mr. Payton's request for a so-called "four corners" review of the search warrant, the Court took no evidence beyond the warrant materials. (Docs. 35, 36.) Both parties requested the opportunity to submit post-hearing briefing on Mr. Payton's motion to suppress, which the Court allowed. Mr. Payton filed his memorandum in support of his motion to suppress on October 5, 2023. (Doc. 37.) The government filed its response on October 18, 2023. (Doc. 38.) Mr. Payton filed his reply brief on October 24, 2023. (Doc. 42.) In those submissions, both parties asserted facts and raised arguments beyond the developed record, bearing directly on the constitutionality of the search of Mr. Payton's vehicle. The Court therefore determined that an evidentiary hearing was necessary to decide the matter. (Doc. 43.) On November 27, 2023, the Court held an evidentiary hearing on Mr. Payton's Motion to Suppress. (Docs. 47 (minutes), 59 (transcript).) Again, Mr. Payton appeared for the hearing, represented by Success Carter and James Becker. T. Campbell Warner appeared on behalf of the government. Several witnesses were called and ten defense exhibits were admitted into evidence (*See generally* Doc. 59.) The parties jointly moved for leave to file additional supplemental briefs (Doc. 46), which the Court granted (Doc. 47). Briefing on this matter concluded on January 2, 2024. For the reasons stated below, the Court recommends that Mr. Payton's Motion to Supress Evidence (Doc. 27) be denied.

## BACKGROUND

At about 11:20 a.m. on March 6, 2023, Winona County Sheriff's Deputy Derek Heyer was on patrol when he received a call that a vehicle had been stolen by a person with a handgun. (Tr.[2] at 6-7, 12). Deputy Heyer responded, and eventually saw the stolen vehicle traveling at 97 miles per hour in a 60 miles per hour zone. (*Id.* at 7.) Deputy Heyer turned to pursue the vehicle, activating his emergency lights and siren. (*Id.* at 7.) The stolen vehicle kept driving, reaching speeds over 100 miles per hour, before the chase ended. (*Id.* at 8, 16.) Deputy Heyer arrested Mr. Payton, who was driving the stolen vehicle, and transported him to jail. (*Id.* At 9, 16-17.)

At the motions hearing, Deputy Heyer testified that Mr. Payton was exhibiting "signs of intoxication" such as delayed reactions, unsteady balance, and red eyes when Deputy Heyer arrested him. (*Id.* at 9.) Nonetheless, Mr. Payton was articulate in answering questions Deputy Heyer asked him. (*Id.* At 20-21.) Deputy Heyer administered tests for alcohol in Mr. Payton's system, but those tests came back negative. (*Id.* at 9.) According to Deputy Heyer, Mr. Payton indicated he had ingested methamphetamine during the police chase. (*Id.* At 10, 28, 30-31.) Deputy Heyer shared this information with his supervising officer Sergeant Mark Dungy, who was also involved in the investigation. (*Id.* at 10.)

Sergeant Dungy testified at the motions hearing that on March 6, 2023, he heard radio traffic about a robbery of a vehicle involving a weapon. (*Id.* at 50.) He joined the pursuit and caught up to Mr. Payton after the stolen vehicle had been disabled by stop

---

[2] For ease of reference, the evidentiary hearing transcript, available at Docket Number 59, will be cited as "Tr." followed by the specific page number where appropriate.

sticks. (*Id.* at 50-52.) Sergeant Dungy testified that he instructed Deputy John Hazelton to go to the scene of the vehicle robbery to speak with the victim. (*Id.* at 54-55.)

Deputy Hazelton testified that he was en route to pursue the stolen truck when he learned that the pursuit had ended, and Mr. Payton had been arrested. (*Id.* at 59.) At that point, Deputy Hazelton went to the scene of the vehicle robbery to interview witnesses. (*Id*. at 60.) Once there, Deputy Hazelton spoke to two witnesses who told him they noticed a person (later determined to be Mr. Payton) whose Ford Edge was stuck in the snow off the road. (*Id*. at 64-65; Def. Ex. 1 at 1:10-1:45.) They asked Mr. Payton if he wanted help getting his car pulled out. (Tr. At 64-65; Def. Ex. 1 at 1:10-1:45).) Mr. Payton said he did, but then jumped into one of the Good Samaritans' trucks and pushed a handgun to the victim's chest. (Tr. at 65-66; Def. Ex. 1 at 1:45-2:10; 9:09-9:53.) The victim was able to disarm Mr. Payton before Mr. Payton left in the (now stolen) truck. (Def. Ex. 1 at 2:08-2:18; 10:01-10:15.) Deputy Hazelton collected the firearm, which was unloaded and had no magazine, from the scene. (Tr. at 66, 69; Def. Ex. 1 at 17:10-17:20.) Deputy Hazelton testified that, based on his 22 years as a law enforcement officer, he believed it would be uncommon for an unloaded firearm to be at a crime scene without there being ammunition in close proximity. (Tr. at 70.) When Sergeant Dungy then learned that there was a firearm left at the scene of the robbery, he directed officers to impound Mr. Payton's vehicle and draft a warrant application to search it. (*Id.* at 55.)

Investigator Leslie Ladewig was not involved in the pursuit of Mr. Payton, but "was made aware after everything was completed." (Tr. at 38; *see also id.* at 41-43.) Investigator Ladewig was the author of the application for a warrant to search Mr. Payton's vehicle.

4

(Doc. 33-1.[3]) Other than Investigator Ladewig's background, the assertions he made in the application supporting the warrant are reproduced here in their entirety:

> On 03/06/23, dispatch gave out a call that a person with a firearm had taken a motor vehicle from another person in the area of Altura, Mn [within] Winona County. Deputies responded and located the stolen vehicle traveling at a high rate of speed on Highway 248 near Rollingstone, MN which is in Winona County. The stolen vehicle fled from law enforcement before eventually striking stop sticks causing three of the vehicle's tires to deflate. The vehicle stopped in the southbound lane of Highway 61 near the turn lane for Highway 14W. Jonathan Marquist Payton, date of birth XX/XX/85, was arrested on scene and no one else was located in the vehicle. A deputy recovered a firearm on scene where the truck was stolen. A Ford Edge registering to Payton, the suspect, was also recovered near the scene of crime, where the victim's vehicle was stolen. Payton's vehicle was towed from the crime scene to Winona County Sheriff's Office for processing. Payton has a past history of thefts/burglaries in Winona County. Payton has prior convictions for violent crimes in Olmsted County. Payton is a felon and is unable to possess any ammunition or firearms. While in custody at Winona County Jail, Payton admitted to swallowing some controlled substances.
>
> I reviewed Payton's Criminal History and noted guilty pleas for violation of 624.713.1(2) Certain Person Not to Possess Firearm on 07/17/2013, Felony Stalking on 04/23/19, First Degree Burglary on 08/17/22.

(*Id.* at 2-3.)

Deputy Charles Rolbiecki was one of the officers involved in the police chase of Mr. Payton, but played a limited role. (Tr. at 34.) Once Mr. Payton was arrested, Deputy Rolbiecki's job was to impound Mr. Payton's vehicle at the Sheriff's Law Enforcement Center, so that it could be searched later. (*Id.* at 32-34.) Deputy Rolbiecki looked in the car

---

[3] The government attached a version of the warrant and related materials to one of its pleadings, redacting Mr. Payton's date of birth. (Doc. 33-1). Although the Court received the warrant and related materials unredacted during the evidentiary hearing as Defense Exhibit 10, that exhibit included additional materials for a warrant that is not the subject of Mr. Payton's motion to suppress. Rather than muddy waters, the Court relies on the government's submission.

from the outside but did not notice anything unusual other than the keys still being in the ignition. (*Id.* at 33.) He did not perform an inventory search of the vehicle. (*Id.*) Rather, Deputy Rolbiecki taped the vehicle's doors shut so that no one could get inside because he "was told we were going to get a warrant." (*Id.* at 34.)

According to both parties, during the warranted search of Mr. Payton's vehicle law enforcement officers seized a magazine which contained the ammunition listed in the indictment. (Docs. 27, 33.)

## ANALYSIS

**I.     Any defect in the warrant application did not place this case beyond *Leon*'s good faith exception to the exclusionary rule.**

"The Fourth Amendment requires a showing of probable cause before a search warrant may be issued." *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). The Eighth Circuit has defined the probable cause standard as "a fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the [warrant] affidavit." *United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000) (quoting *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999)) (cleaned up). Put another way, the search warrant application must establish a nexus between the evidence sought and the place to be searched. *United States v. Jones*, 74 F.4th 941, 948 (8th Cir. 2023). Whether such a nexus exists is based on a reasonable, common-sense approach, with great deference given to the issuing judge's determination. *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009). Among the factors that courts consider are the nature of the crime under investigation, and the "reasonable, logical likelihood of finding useful

6

evidence" in the place to be searched. *Jones*, 74 F.4th at 948 (quoting *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016)).

The Court turns to the warrant application in this case, which was signed by Investigator Ladewig. During his testimony at the evidentiary hearing, Investigator Ladewig suggested a person who has drugs on them might also have drugs in their vehicle, and also testified that it was not "unheard of" that a person might have more than one firearm. (Tr. at 39-40.) The Court understands the government's purpose in adducing this testimony was to try to link Mr. Payton's possession (and ingestion) of drugs during the vehicle chase to the possibility that more drugs were in his own vehicle; and that Mr. Payton's use of a firearm to steal a truck meant he might have more guns in his car. However, these suppositions are not found within the warrant application, so the Court ignores them in analyzing the warrant's constitutionality. *See United States v. Moulder*, No. 20-cr-2323 (JRT/BRT), 2022 WL 4001207, at *1 (D. Minn. May 21, 2022) ("When the issuing court relies solely on an affidavit to determine whether probable cause exists, only the information found within the four corners of the affidavit may be considered.") (cleaned up), *R. and R. adopted,* 2022 WL 4000203 (D. Minn. Sept. 1, 2022). Properly focusing on the warrant application, here was the information before the issuing court:

- on March 6, 2023, a person with a firearm stole a motor vehicle;
- the stolen vehicle fled on a high-speed chase;
- Mr. Payton was arrested where the stolen vehicle stopped;
- law enforcement recovered a firearm from the scene of the vehicle robbery;
- A Ford Edge registering to Mr. Payton was also near the scene of the robbery;

7

- Mr. Payton has been convicted of felony offenses, with a history of thefts, burglaries, and violent crimes;
- Mr. Payton admitted to swallowing drugs.

(Doc. 33-1.)

A warrant issued based on this application, authorizing law enforcement officers to search Mr. Payton's vehicle for: weapons or ammunition; electronic devices (that is, cell phones); controlled substances; documents showing vehicle ownership; and stolen property. (*Id.* at 5-7.)

Guided by the principles set forth above, the Court has serious reservations about whether the warrant here was supported by probable cause. It is true that there are countless cases where warrants are supported by probable cause to search a place *other* than where a suspect is arrested or where a crime occurred. *See, e.g., Keele*, 589 F.3d at 944 (drug manufacturing equipment in vehicle supported probable cause to search for similar contraband at suspect's residence); *United States v. Willard*, No. 22-cr-80 (DWF/DTS), 2023 WL 2838102, at *3 (D. Minn. Jan. 11, 2023) (sufficient nexus existed between criminal activity and suspect's apartment based on social media posts showing suspect's possession of firearms, firearms discovered in suspect's vehicle, and location data showing burglary co-defendant near suspect's apartment shortly after burglary),*R. and R. adopted*, 2023 WL 2401515 (D. Minn. Mar. 8, 2023). But those cases rightly focus on the individual nature and circumstances of the crimes being investigated: where a person is engaged "in a continuing course of criminal activity," or where it can be fairly inferred that a drug dealer might keep their stash elsewhere, searching additional locations may be permissible. *Tellez*,

8

217 F.3d at 549; *see also United States v. Neadeau*, No. 20-cr-224 (WMW/LIB), 2021 WL 4046393, at *4 (D. Minn. June 22, 2021) (noting that magistrates may draw reasonable inferences about where evidence is likely to be kept), *R. and R. adopted*, 2021 WL 367496 (D. Minn. Aug. 19, 2021.)

That is not the case here. By the application's read, Mr. Payton engaged in a crime of opportunity that had a discrete beginning (when he stole the victim's vehicle) and end (when he was arrested). A reasonable interpretation is that Mr. Payton used a firearm to steal someone's vehicle, leaving the firearm behind when he fled. But nothing about that suggests that Mr. Payton might have *another* firearm or ammunition in his Ford Edge. The same is true for controlled substances: even if Mr. Payton ingested drugs during the police chase (as the application asserts), it does not logically flow that there is a fair probability that more drugs were in his car; if anything, the opposite is true, since a reasonable inference to be drawn from Mr. Payton ingesting drugs was that he was trying to conceal evidence. And it is simply too far a stretch to suggest that because Mr. Payton had a criminal history that included theft and burglary there was probable cause to search his car for stolen property.

Whether the warrant application established probable cause to search for electronic devices and documents establishing ownership of Mr. Payton's Ford Edge is a closer question. On one hand, such information appears reasonably related the investigation: cell phones and location data could link Mr. Payton to the Ford Edge, supporting the theory that he was the person who accosted and ultimately stole the victim's truck after the Ford

Edge became stuck.[4] On the other, suspect cell phones would likely help with *any* investigation, and the Court has concerns that warrants seeking such items, wherever they may be without some indication the item is *actually* located in the place to be searched—could lead to the type of broad, general rummaging prohibited by the Fourth Amendment. And here, nothing in the warrant application suggested "electronic devices" were likely to be found in Mr. Payton's vehicle.

Ultimately, the Court finds it unnecessary to fret in the nuance of this issue, because of *Leon*'s good faith exception to the exclusionary rule. "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). The Court need not mechanistically determine the issues of probable cause and good faith separately and in that order; rather, *Leon* presumed that its good-faith analysis would be flexibly applied, 468 U.S. at 924-25, and courts have often considered the good faith exception without definitively reaching the issue of probable cause, *see, e.g., Perry*, 531 F.3d at 665-66; *United States v. Proell*, 485 F.3d 427, 430-31 (8th Cir. 2007); *United States v. Carpenter*, 341 F.3d 666, 668-69 (8th Cir. 2003). While *Leon* identified four potential exceptions to good faith, *Proell*, 485 F.3d at 431, the parties focus on only two: whether the warrant was facially deficient, and whether the warrant was so lacking in probable cause that official belief on its existence was entirely unreasonable. (Doc. 39 at 12-14; Doc. 42 at 9-10.)

---

[4] It is harder to say the same for documents showing ownership of the Ford Edge, since the application itself indicated that Mr. Payton was the registered owner. (Doc. 33-1.)

10

Facial deficiency "relates to alleged infirmities with the warrant itself rather than the affidavit behind the warrant." *Carpenter*, 341 F.3d at 673. This may be the case, for instance, where a warrant does not particularize the place to be searched or the things to be seized. *Id.* That is not the case here: the issued warrant commanded officers to search Mr. Payton's vehicle for specific items, giving fair direction on what to search, what to look for, and what to seize. *Accord id.*

Additionally, to the extent the warrant here may have lacked probable cause, it was not so flawed that law enforcement was "entirely unreasonable" in relying on it. *Proell*, 485 F.3d at 432. "'Entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." *Id.* (quoting *Carpenter*, 341 F.3d at 670). This is so because an executing officer cannot ordinarily be expected to second-guess the probable cause determination of a court. *Perry*, 531 F.3d at 665. According to the application, Mr. Payton was arrested for stealing a vehicle at gunpoint; but there was another vehicle still back at the scene of the crime, registered to Mr. Payton, and a firearm (presumably the one during the vehicle theft). It would not be "entirely unreasonable" for an executing officer, particularly one presented with a warrant to search Mr. Payton's vehicle based on those facts, to follow the court's command. Therefore, the Court recommends denying Mr. Payton's motion to suppress evidence.

## II. Even in the absence of a warrant, the search of Mr. Payton's vehicle would not be unconstitutional.

As it had done in its pre-hearing submission (Doc. 39), the government's post-hearing memorandum asserts that regardless of whether the Court finds any constitutional infirmity with the warrant to search Mr. Payton's vehicle, there is no basis to suppress evidence for two reasons: (1) Mr. Payton had abandoned his vehicle, forfeiting any reasonable expectation of privacy in its contents; and (2) under the so-called "automobile exception" to the warrant requirement, there was probable cause to search Mr. Payton's vehicle without a warrant. (Doc. 57.) The Court addresses each argument in turn.

### A. Abandonment

First, the government argues that Mr. Payton abandoned his vehicle, and thus "the Fourth Amendment does not apply." (*Id.* at 4-5.) It is true that a person does not have a reasonable expectation of privacy in abandoned property. *United States v. Tugwell*, 125 F.3d 600, 602-03 (8th Cir. 1997). Abandonment is decided based on the totality of objective facts available to law enforcement. *United States v. Crumble*, 878 F.3d 656, 659 (8th Cir. 2018). The two most important inquiries are: (1) did the subject deny ownership of the property, and (2) did the subject physically relinquish the property, typically "in a manner manifesting an intent never to reclaim" it. *United States v. James*, 353 F.3d 606, 616 (8th Cir. 2003).

The government bears the burden of establishing that Mr. Payton abandoned his vehicle, *id.*, and it cannot meet that burden here. Considering the two principal factors set forth above, there is no evidence Mr. Payton denied ownership of his vehicle. On the

contrary, law enforcement officers knew Mr. Payton was the registered owner of the Ford Edge—it was something Investigator Ladewig listed in the warrant application. (Doc. 33-1 at 2.) And although Mr. Payton left his vehicle, it appears he did so because it was stuck in the snow. (*See generally* Def. Exs. 1, 8.) This is not a case like *Crumble*, where the subject's vehicle was "wrecked on a stranger's lawn," with the back window shot out. 878 F.3d at 659-60. Rather, Mr. Payton's car was stuck in the snow on the side of the road, but apparently otherwise functional. (Def. Ex. 8.) Indeed, this was apparent to the victim-witnesses, who told Deputy Hazelton they planned to help get the vehicle unstuck—something that would not happen if the vehicle was truly abandoned. (Def. Ex. 1.) The Court cannot find abandonment under these circumstances.

**B.     Automobile Exception**

"Although a warrantless search usually constitutes a *per se* Fourth Amendment violation, the automobile exception to the Fourth Amendment's warrant requirement permits the warrantless search or seizure of a vehicle by officers possessing probable cause to do so." *United States v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020) (citing *Chambers v. Maroney*, 399 U.S 42, 51-52 (1970)). The standard remains the same as when the Court reviews a warrant, but the determination of probable cause (or not) is based on the totality of circumstances, not just those presented in the warrant application. *Id.*; *see also United States v. Murillo-Salgado*, 854 F.3d 407, 417-18 (8th Cir. 2017). Officers may draw inferences based on their own experience, *id.* at 418, and rely on the collective knowledge of other officers involved in the investigation, *United States v. Edwards*, 891 F.3d 708, 711-12 (8th Cir. 2018).

In this case, the testimony adduced at the evidentiary hearing filled any gaps that were missing in the warrant application, supporting probable cause to conduct a warrantless search of Mr. Payton's vehicle. Most notably, Deputy Hazelton arrived at the scene of the vehicle theft, knowing he was charged with speaking to the victim-witnesses. These witnesses informed Deputy Hazelton that the assailant (presumably Mr. Payton) confirmed his vehicle—the Ford Edge—was stuck and he wanted help getting it back on the road. One of the victims was then assaulted by the assailant with a firearm. The victim disarmed the assailant and retained the firearm. When Deputy Hazelton collected the firearm at the scene, he noticed—and the witnesses confirmed—that it had no magazine. Deputy Hazelton testified that based on over two decades of law enforcement experience, he believed that ammunition would likely be nearby. It would be a reasonable, common-sense assumption that the firearm's missing magazine or ammunition may be found in Mr. Payton's vehicle, since the evidence suggested that Mr. Payton and the firearm were in his nearby vehicle just before he brandished the gun at one of the victims. This is all that the probable cause standard requires. *Tellez*, 217 F.3d at 549.

Mr. Payton asserts that the automobile exception should not apply here because there was no exigency by virtue of Mr. Payton's arrest and fact that the vehicle was likely stuck in the snow. (Doc. 60.) He notes that the "government cites no authority to support applying the automobile exception to a case with facts similar to Mr. Payton's, where under no circumstances could 'evidence be on the move.'" (Doc. 60 at 7.) "Ready mobility is not, however, the only basis for the exception." *United States v. Hepperle*, 810 F.2d 836, 840 (8th Cir. 1987). Rather, courts for decades have recognized that there is a reduced

14

expectation of privacy generally in vehicles (as opposed to homes), also justifying the exception. *Id.*

> Based on these rationales, the Eighth Circuit has found a warrantless vehicle search justified under the automobile exception where a pickup truck was stuck in a ditch because it had not "lost its inherent mobility" and "could have been driven away" if it was simply towed "out of the ditch." *United States v. Maggard*, 221 F.3d 1345 (8th Cir. 2000) (per curiam) (unpublished table decision). The automobile exception also applies to parked cars, even where the officers are aware that they are unlikely to be driven away, because "[i]t is the characteristic mobility of all automobiles, not the relative mobility of the car in a given case, that gives rise to the [] standard which allows for warrantless searches when probable cause exists." *United States v. Perry*, 925 F.2d 1077, 1080–81 & n.4 (8th Cir. 1991) (applying the exception where the vehicle was parked in a school parking lot and the occupants were unlikely to drive it away because they had already been arrested at the time the search was conducted).

*United States v. Alatorre*, No. 19-cr-061 (ECT/KMM), 2019 WL 5149971, at *12 (D. Minn. July 22, 2019), *R. and R. adopted,* 2019 WL 4463401 (D. Minn. Sept. 18, 2019); *see also United States v. Williams*, No. 19-cr-84 (SRN/DTS), 2019 WL 5149987, at *4 (D. Minn. Aug. 5, 2019) (rejecting argument that automobile exception should not apply to vehicle stuck in snow because the "car could become unstuck and be driven away by shoveling some snow, pushing the car, pulling it with a tow line, or putting down sand or other materials to gain traction under the tires"), *R. and R. adopted*, 2019 WL 4565577 (D. Minn. Sept. 20, 2019). Indeed, the Eighth Circuit has applied the automobile exception where a vehicle had a flat tire, *United States v. Short*, 2 F.4th 1076, 1079 (8th Cir. 2021), and to impounded vehicles in police custody when an immediate search could have been conducted on the scene, *Soderman*, 983 F.3d at 376.

Based on the application of the automobile exception to the Fourth Amendment's warrant requirement, the Court concludes that probable cause existed to conduct a warrantless search of Mr. Payton's vehicle for evidence of his crimes, including searching for ammunition missing from the firearm. Accordingly, the Court recommends denying Mr. Payton's motion to suppress on this basis as well.

Accordingly, based on all the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Mr. Payton's Motion to Suppress Evidence (Doc. 27) be **DENIED**.

Date: February 1, 2024

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).