## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-cr-192 (KMM/DLM) |
| Plaintiff, | |
| v. | **ORDER** |
| JONATHAN MARQUIST PAYTON, | |
| Defendant. | |

In a one-count Indictment, the government alleges that on or about March 6, 2023, Jonathan Payton, having previously been convicted of one or more felonies, possessed ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Indict., Doc. 1. Mr. Payton filed a motion to suppress evidence, including the ammunition identified in the Indictment, that was obtained during a search of his vehicle. Mot., Doc. 27. Following an evidentiary hearing,[1] United States Magistrate Judge Douglas L. Micko issued a Report and Recommendation ("R&R") in which he recommended that Mr. Payton's motion be denied. R&R, Doc. 62. Mr. Payton filed timely objections to the R&R, Objections, Doc. 65, and the suppression issue is now before the Court for a decision.

---

[1] Judge Micko held an initial pretrial motions hearing on September 21, 2023, Doc. 36, and took no evidence beyond the warrant materials based on Mr. Payton's request for a "four corners" review of the search warrant. However, in post-hearing briefing, the parties raised arguments based on facts that were not in the record, and Judge Micko determined that an evidentiary hearing was required. R&R at 2. In preparing this Order, the Court has reviewed all relevant briefing, the search warrant and application, the testimony provided at the evidentiary hearing, and Defense Exhibits 1–10 (including bodycam footage from several officers, still images, maps of the scene of the vehicle robbery, and the search warrant and return).

1

When a magistrate judge conducts an evidentiary hearing and submits an R&R with proposed findings and a recommended disposition on a motion to suppress evidence, the district court conducts a *de novo* review of any portion of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); D. Minn. LR 72.2(b). When conducting such a review following the magistrate judge's evidentiary hearing, the district court must review the evidence admitted at that hearing, including any transcript of the testimony of witnesses and any video or audio recordings. *See United States v. Azure*, 539 F.3d 904, 910–11 (8th Cir. 2008); *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995); *United States v. Benitez*, 244 F. App'x 64, 66 (8th Cir. 2007). "The district judge may accept, reject, or modify" the R&R, in whole or in part, or take other appropriate actions. Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1). Having conducted the required *de novo* review, the Court overrules Mr. Payton's objections, accepts the R&R, and denies the motion to suppress.

**I.     Background[2]**

On March 6, 2023, while he was out on patrol, Winona County Sheriff's Deputy Derek Heyer responded to a report from dispatch that a pickup truck was stolen by a person with a handgun. Deputy Heyer eventually located the stolen vehicle and engaged in a high-speed pursuit. Eventually, the stolen vehicle was stopped using "stop sticks," and the driver, Mr. Payton, was arrested and taken to jail.

---

[2] In his objections to the R&R, Mr. Payton does not argue that Judge Micko's factual findings were erroneous. Based on this Court's review of the testimony and the other evidence before Judge Micko, the Court finds no error in the R&R's factual determinations and adopts them in full.

Because Deputy Heyer believed Mr. Payton was exhibiting signs of intoxication, Deputy Heyer conducted a chemical test for alcohol. Those tests came back negative, but Deputy Heyer suspected that Mr. Payton may have been using drugs. Deputy Heyer asked Mr. Payton if he had taken any drugs, and Mr. Payton admitted he took methamphetamine during the pursuit. No firearm or ammunition was recovered from the stolen truck.

Winona County Sheriff's Sergeant Mark Dungy also heard the dispatch report and eventually arrived at the scene where the stolen vehicle was stopped. He instructed Winona County Sheriff's Deputy John Hazelton to go the scene of the vehicle robbery. That location, near a residence off Bear Creek Drive, was about fifteen miles away.

When Deputy Hazelton arrived at the scene of the robbery, there was a Ford Edge vehicle in the snow on the side of the road, and there were two witnesses nearby, AG and NB. Deputy Hazelton interviewed them, and they explained that the nearby residence belonged to AG's family. When AG and NB arrived at the residence earlier that day, they saw a person (Mr. Payton) walking around close to the home and approached him to find out why he was there. Mr. Payton told them that his vehicle had gotten stuck in the snow on the side of the gravel road. AG and NB asked him if he needed help getting the vehicle pulled out, and Mr. Payton said that he did. NB told Deputy Hazelton that as he was adjusting a trailer on a pickup truck so that it could be moved into position to pull the Ford Edge out of the snow, he saw Mr. Payton getting closer to the truck. NB tried to run to get into the truck, but before he could get there, Mr. Payton jumped in the truck's driver's seat. NB said he arrived at the open driver's side door right after Mr. Payton jumped inside, and Mr. Payton pulled a firearm and pointed it at NB's chest. NB grabbed the firearm and took

3

it away from Mr. Payton. Mr. Payton immediately sped away in AG's truck. *See* Ex. 1, Hazelton Bodycam Video.

Deputy Hazelton recovered the firearm from the scene of the robbery, but he did not recover any ammunition. The firearm was unloaded and there was no magazine. At the hearing, Deputy Hazelton testified about why he thought ammunition for the firearm might be in the Ford Edge that was nearby:

> Q. Okay. But [NB] didn't turn over any fire -- or any ammunition to you or anything like that.
>
> A. That's correct.
>
> Q. And you also have personal experience with firearms outside of your professional job as a law enforcement officer?
>
> A. Yes, sir.
>
> . . . .
>
> Q. So you're at a crime scene where you've got a firearm that was used in a crime but the firearm was unloaded.
>
> It is fairly uncommon, is it not, when you have a firearm without having ammunition at least somewhere close by?
>
> A. Yes.
>
> Q. Okay. Such as maybe in the guy's vehicle?
>
> A. Yes.

Tr. 69:13–70:14.

Deputy Hazelton informed Sergeant Dungy that he had recovered the firearm. Sergeant Dungy asked Deputy Hazelton to have the Ford Edge, which was registered to Mr. Payton, towed to the Winona County Sheriff's Office impound lot so that a search warrant could be obtained for the vehicle.

4

Sergeant Dungy asked Winona County Sheriff's Office Investigator Leslie Ladewig to prepare the search warrant. Investigator Ladewig was provided with information about the events of the day to include in the affidavit supporting the request for the search warrant. The affidavit of probable cause for the warrant states as follows:

> On 03/06/23, dispatch gave out a call that a person with a firearm had taken a motor vehicle from another person in the area of Altura, Mn [within] Winona County. Deputies responded and located the stolen vehicle traveling at a high rate of speed on Highway 248 near Rollingstone, MN which is in Winona County. The stolen vehicle fled from law enforcement before eventually striking stop sticks causing three of the vehicle's tires to deflate. The vehicle stopped in the southbound lane of Highway 61 near the turn lane for Highway 14W. Jonathan Marquist Payton, date of birth XX/XX/85, was arrested on scene and no one else was located in the vehicle. A deputy recovered a firearm on scene where the truck was stolen. A Ford Edge registering to Payton, the suspect, was also recovered near the scene of crime, where the victim's vehicle was stolen. Payton's vehicle was towed from the crime scene to Winona County Sheriff's Office for processing. Payton has a past history of thefts/burglaries in Winona County. Payton has prior convictions for violent crimes in Olmsted County. Payton is a felon and is unable to possess any ammunition or firearms. While in custody at Winona County Jail, Payton admitted to swallowing some controlled substances.
>
> I reviewed Payton's Criminal History and noted guilty pleas for violation of 624.713.1(2) Certain Person Not to Possess Firearm on 07/17/2013, Felony Stalking on 04/23/19, First Degree Burglary on 08/17 /22.

Doc. 33-1. The application for the search warrant sought (1) weapons or ammunition; (2) any electronic devices capable of storing data, including historical GPS location data; (3) any controlled substances; (4) any documents showing ownership of the vehicle; and (5) any property that may be stolen or unrelated to the owner of the vehicle. *Id.* at 1. A

5

Winona County District Judge issued the warrant on the afternoon of March 6, 2023. Investigator Ladewig searched the vehicle on the morning of March 7, 2023, and recovered a magazine containing ammunition. *Id.* at 8. The magazine and ammunition were discovered lodged inside the mechanical area behind the dashboard after officers dismantled the dashboard paneling. *Id.*; *see also* Doc. 60 at 3 and Doc. 39 at 3.

Mr. Payton argued that the evidence seized from the Ford Edge should be suppressed because the search violated his Fourth Amendment rights. He asserted that the search warrant was not supported by probable cause and that no exception to the warrant requirement justified the search. In the R&R, Judge Micko determined that suppression of the evidence was not required. First, Judge Micko expressed "serious reservations about whether the warrant here was supported by probable cause" because the face of the warrant failed to establish a nexus between criminal activity and the place to be searched. However, he determined that even if the warrant application failed to establish probable cause, the evidence should not be suppressed based on the good-faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984). R&R at 6–11. Next, Judge Micko concluded that the search of Mr. Payton's vehicle was justified even in the absence of a warrant because the evidence in the record demonstrated that there was probable cause to search Mr. Payton's vehicle pursuant to the so-called "automobile exception" to the warrant requirement." R&R at 13–16.[3]

---

[3] Judge Micko rejected the government's argument that Mr. Payton lacked a reasonable expectation of privacy in the vehicle due to his alleged abandonment of the Ford Edge. R&R at 12–13. The government has not objected to that conclusion.

**II.     Discussion**

Mr. Payton objects to the R&R on grounds that it misapplies the automobile exception and the *Leon* good-faith exception to the exclusionary rule. Having reviewed the objections and conducted the required *de novo* review, the Court disagrees with both arguments.

**A. Automobile Exception**

First, Mr. Payton argues that the R&R erred in applying the automobile exception under the circumstances because "no exigency was present and [he had] heightened privacy expectations in the area" where the magazine and ammunition were located. Objections at 5–6. In support of this argument, he asserts that (1) his vehicle was not readily mobile; (2) officers did not search for items in plain view, but rather dismantled the vehicle's dashboard to find the magazine; (3) his vehicle was not "at the center of the criminal conduct alleged"; and (4) his vehicle was immobilized on a residential pathway when they found it, rather than on a public highway. *Id.*

These arguments fail to convince the Court that Judge Micko erred in applying the automobile exception in this case. First, Mr. Payton's suggestion that a purported lack of ready mobility of the Ford Edge undermines the R&R's application of the automobile exception is unavailing. Mr. Payton concedes[4] that the ready mobility of a vehicle is not the only basis for development of the automobile exception. *California v. Carney*, 471 U.S. 386, 391 (1985) ("[A]though ready mobility alone was perhaps the original justification

---

[4] Objections at 5 (citing *United States v. Hepperle*, 810 F.2d 836, 840 (8th Cir. 1987)).

for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception."). "Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception." *Id.* As a result, the exception applies even when a vehicle is not capable of being driven away the instant it was encountered by law enforcement.[5]

Additionally, there is no suggestion in the record that the vehicle at issue here had any "permanent immobility." *United States v. Maggard*, 221 F.3d 1345, *1 (8th Cir. 2000) (per curiam) (unpublished table opinion). When the officers saw the vehicle, it was not immediately apparent to them that it was incapable of operation. *Hepperle*, 810 F.2d at 840 (noting that "the vehicle's alleged immobility was not visibly apparent"). Instead, the available facts suggested that if the vehicle had been towed out of the ditch it could have been driven away. *See Maggard*, 221 F.3d at *1 ("Inasmuch as there was no evidence of any permanent immobility, it was reasonable for the officers who conducted the search to conclude that all the truck needed was to be towed out of the ditch and then it could have been driven away."). The fact that the vehicle was near a residence, rather than on the side of a public highway also does not render the automobile exception inapplicable. *Blaylock*, 535 F.3d at 926 (applying the automobile exception to a vehicle parked in the driveway of a residence). And, even though it could have been searched at the scene, the subsequent

---

[5] Mr. Payton's references to the lack of "exigency" do not change this conclusion. "No exigency beyond that created by the ready mobility of an automobile is required for a warrantless search of a car to fall within the exception." *United States v. Blaylock*, 535 F.3d 922, 926 (8th Cir. 2008).

8

search of the vehicle under the automobile exception was no less valid simply because it had been towed, impounded, and was in police custody when the search was conducted. *United States v. Soderman*, 983 F.3d 369, 376 (8th Cir. 2020).

The Court is also not persuaded that Judge Micko erred in applying the automobile exception because the search examined a compartment beneath the dashboard paneling. Under the automobile exception, if the officers have probable cause to believe that the vehicle contains evidence of criminal activity or contraband, they may conduct a complete search of "every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982); *see United States v. Williams*, No. 19-CR-84 (SRN/DTS), 2019 WL 4565577, at *8–9 (D. Minn. Sept. 20, 2019) (finding that officers did not exceed the scope of the automobile exception where they found evidence beneath the window and door-lock control panel of the driver's side door).

Next, Mr. Payton argues that the R&R misapplied the automobile exception because the evidence did not support a finding of probable cause that evidence of criminal activity or contraband would be found in the vehicle. Mr. Payton argues that Deputy Hazelton's testimony failed to connect the car to any criminal activity or the possibility that ammunition or firearms would be found inside it, and he suggests that unlike other cases involving the automobile exception his vehicle was not "at the center" of any criminal

conduct.[6] The Court disagrees. Deputy Hazelton's testimony and the bodycam footage confirm that he obtained the firearm from the scene of the robbery, that it was unloaded, and that there was no magazine with the handgun. Deputy Hazelton also testified that he believed, based on his training and experience throughout a lengthy law enforcement career, that ammunition was likely to be close to the crime scene. Judge Micko found that "[i]t would be a reasonable, common-sense assumption that the firearm's missing magazine or ammunition may be found in Mr. Payton's vehicle, since the evidence suggested that Mr. Payton and the firearm were in his nearby vehicle just before he brandished the gun at one of the victims." R&R at 14. This Court agrees.

The evidence showed that when NB and AG first saw Mr. Payton, he told them he had gotten his vehicle stuck at the entrance to the driveway of the nearby residence when he had become turned around, and they relayed that information to Deputy Hazelton. A reasonable officer would conclude that there was a fair probability the magazine and ammunition would be found in the suspect's own vehicle, which he had occupied shortly before he committed the robbery. *See, e.g.*, *United States v. Murillo-Salgado*, 854 F.3d

---

[6] Mr. Payton's assertion that the Ford Edge was not "at the center of the criminal conduct alleged" is best understood in the context of whether there was probable cause to search the vehicle even though he does not explicitly raise this argument in that context. Objections at 5 n.3 (citing Doc. 60, Part III.B.). The question in this case, as in any case involving the automobile exception, is whether there is probable cause to believe that a vehicle "contains contraband or evidence of criminal activity." *See, e.g.*, *United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016). Mr. Payton points to no case imposing a requirement that the vehicle to be searched pursuant to this exception must be at the center of the criminal conduct alleged, but in any event, Mr. Payton's vehicle was fairly well connected to the robbery: its placement in the snow led to his contact with the victims and created the circumstances that enabled him to steal the truck. Moreover, the testimony at the hearing established a reasonable basis for Deputy Hazelton's belief that the missing magazine or ammunition was likely to be somewhere in the Ford Edge.

407, 418 (8th Cir. 2017) (explaining that probable cause is a "practical and common-sensical standard" and that officers may rely on inferences based on their own experiences in determining whether it exists). Contrary to Mr. Payton's argument, this is not mere speculation, but reflects reasonable inferences one might draw from the surrounding circumstances.

Finally, Mr. Payton asserts that the automobile exception "ought to be a justification for a warrantless search, not an after-the-fact remedy for a deficient warrant that lacks probable cause." Objections at 7–8. In support of this argument, Mr. Payton cites *United States v. Maccani*, 526 F. Supp. 3d 420, 453 (N.D. Iowa 2021). The *Maccani* court discussed a view that the automobile exception "should be understood as a justification for *warrantless* search, not a post hoc remedy for a deficient warrant," and indicated that in the absence of controlling precedent, it would not have applied the automobile exception when a search warrant later proved to be defective. *Id.* However, as the *Maccani* court acknowledged, the "Eighth Circuit Court of Appeals has plainly held that the automobile exception may be applied to justify a search when the warrant for that search is later found to be deficient." *Id.* (citing *United States v. Holleman*, 743 F.3d 1152, 1158 (8th Cir. 2014) ("[A]ny infirmities in the search warrant application are irrelevant so long as the search of the vehicle fell within the automobile exception to the search warrant requirement.")). Like the court in *Maccani*, this Court must apply Eighth Circuit precedent.

**B. Good-Faith Exception**

Mr. Payton argues that the warrant failed to establish probable cause for the search warrant and that the showing of probable cause was so lacking that the R&R erred in

11

concluding, pursuant to *Leon*, that a reasonable officer would have been justified in relying on the warrant. Though the Court shares Judge Micko's concerns about the adequacy of the showing of probable cause in the warrant application,[7] Mr. Payton's objection is overruled.

Judge Micko reasoned that *Leon*'s good-faith exception applied because the warrant application explained that Mr. Payton had been arrested for "stealing a vehicle at gunpoint; but there was another vehicle still back at the scene of the crime, registered to Mr. Payton, and a firearm (presumably the one during the vehicle theft)." R&R at 11. Under those circumstances, Judge Micko found that it was not "'entirely unreasonable' for an executing officer . . . to follow the court's command" to search the Ford Edge. *Id.*

In arguing that Judge Micko erred in applying the good-faith exception, Mr. Payton relies on *United States v. Herron*, 215 F.3d 812 (8th Cir. 2000) and *United States v. Ramirez*, 180 F. Supp. 3d 491 (W.D. Ky. 2016). In *Herron*, the court found that the affidavit supporting the warrant to search Mr. Herron's residence was too deficient to allow a reasonable officer to rely upon it because it focused all suspicion of illegal activity on a different suspect and a different location. 215 F.3d at 814–15. And the *Ramirez* court found that the *Leon* good-faith exception did not apply where the affidavit supporting the warrant

---

[7] The Court also agrees with Judge Micko's observations about the tenuous connections between the vehicle, the items targeted in the search, and the suspected criminal activity. For example, the fact that Mr. Payton had admitted to swallowing a controlled substance at some unspecified time does not create a reasonable probability that a controlled substance would be in the vehicle. R&R at 8–9. Nor do Mr. Payton's prior convictions, without more, suggest that any stolen property was likely to be in the vehicle. *Id.* at 9. Judge Micko also properly observed that a closer question is presented by the fact that the search warrant sought electronic devices and documents that show ownership of the vehicle, but that those questions ultimately did not need to be resolved due to application of the good-faith exception. *Id.* at 9–10.

to search the contents of a cell phone seized from Mr. Ramirez included only a description of the phone, a statement that Ramirez had been arrested "for a drug-related conspiracy while possessing the phone," and said that the officer preparing the affidavit had served for three years in a county sheriff's office. 180 F. Supp. 3d at 494–95.

Here, the affidavit does more than the warrant applications at issue in either *Herron* or *Ramirez*. The affidavit identified Mr. Payton's own conduct, identified that *his* vehicle was the one to be searched, that his vehicle was recovered at the scene where he stole the truck, and indicated that a firearm was recovered on the scene where the truck was stolen. Even if the Court were to conclude that this affidavit fails to provide a substantial basis for the issuing judge to have determined that there was probable cause, the Court agrees with Judge Micko that it was not so lacking in indicia of probable cause that it would have been entirely unreasonable for an officer to have relied on the search warrant in good faith when executing it. *Leon*, 468 U.S. at 923; *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003) (explaining that the "entirely unreasonable" standard established by *Leon* is a "particularly strong choice of words"). Accordingly, Mr. Payton's objection to application of the good-faith exception is overruled and his motion to suppress is denied.

### ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT:**

1. The R&R, Doc. 62, is **ACCEPTED**;
2. Mr. Payton's Objections, Doc. 65, are **OVERRULED**; and
3. Defendant's Motion to Suppress Evidence, Doc. 27, is **DENIED**.

Date: March 29, 2024                     *s/Katherine Menendez*
                                          Katherine Menendez
                                          United States District Judge